BANK OF VANCE, RECEIVER OF FARMERS AND MERCHANTS BANK, v. ETHEL D. CROWDER, R. B. CROWDER, HER HUSBAND, AND J. C. KITTRELL, TRUSTEE FOR THE COMMISSIONERS OF VANCE COUNTY.

(Filed 5 October, 1927.)

1. **Trusts—Implied Trusts—Fraud—Equity—Husband and Wife—Banks and Banking.**

    Where the cashier of a bank has wrongfully appropriated the bank's money and buys lands, taking title to his wife, a trust is imposed upon the title in equity, by reason of the fraud, which may be followed by the bank into its converted form by suit for the purpose.

2. **Husband and Wife—Deeds and Conveyances—Gifts—Presumptions—Evidence—Instructions.**

    While there is a presumption of a gift where the husband uses his money for the purchase of lands and takes title in his wife, it may be

rebutted by showing that the money belonged to the separate estate of the wife, or was derived from other sources, and when the evidence is conflicting it is reversible error for the trial judge to charge the jury that there was a presumption of a gift without fully charging the law arising thereon.

APPEAL by defendants from *Grady, J.,* at June Term, 1927, of VANCE.

This was a suit in equity to establish a trust in land conveyed to Ethel D. Crowder, the *feme* defendant—the trust when declared to be subject to the deed of trust held by the defendant Kittrell as trustee. The real controversy is between the plaintiff and Mrs. Crowder. In 1912 the Farmers and Merchants Bank was organized as a banking institution under the laws of North Carolina and conducted a banking business until 16 April, 1924, when its doors were closed. Its principal place of business was in Henderson, the defendant, R. B. Crowder, serving as its cashier during the time of its business activity. On 31 October, 1922, W. P. Gholson and his wife conveyed to the *feme* defendant a lot in the town of Henderson at the agreed price of $5,500. Of this sum $3,000 was paid to R. B. Crowder by Melville Dorsey for the benefit of the grantee, who is his daughter, and was applied by Crowder in part payment of the purchase price. The remainder ($2,500) was paid in this way: James Plummer had executed his promissory note to the Farmers and Merchants Bank in the sum of $2,500, bearing interest at 6 per cent until paid, and the defendant, R. B. Crowder, then cashier, discounted the note and credited the amount to his individual account. On 10 November, 1922, he gave his personal check on the Farmers and Merchants Bank for $5,500 in full payment of the amount due for the lot. The plaintiff's most material allegations are that R. B. Crowder fraudulently discounted the Plummer note for his own benefit and fraudulently used the amount thereof in the purchase of the land, the title to which was conveyed to his wife; that she was not a bona fide purchaser for value; that the money has not been repaid, and that the bank is entitled to have a constructive trust impressed upon the property to secure return to the bank of the amount thus misappropriated by Crowder.

Separate answers were filed by Ethel D. Crowder and her husband. She alleged that she was a bona fide purchaser for value; that she had no knowledge of her husband's alleged malfeasance until some time after the whole amount of the purchase money had been paid by her father for her benefit; that the full amount of the note discounted by her husband had been returned to the bank. She alleged also that she had made valuable improvements upon the premises.

In his answer R. B. Crowder alleged that in discounting the Plummer note he had no fraudulent intent; that Mrs. Crowder had no knowledge of the discount, and that the amount had been paid back to the bank.

Issues were submitted to the jury and answered as follows:

1. Were the lands described in the complaint paid for in whole or in part by R. B. Crowder out of the moneys derived from the discounting of the James Plummer note, as alleged in the complaint? Answer: Yes.

2. If so, what amount of money belonging to said Farmers and Merchants Bank was invested in said lands by R. B. Crowder? Answer: $2,500.

3. If such moneys were invested in said lands, as alleged, has the same been repaid by the defendants or either of them? Answer: No.

4. Is the plaintiff's cause of action barred by the statute of limitations? Answer: No.

It was adjudged upon the verdict that the defendant, Ethel D. Crowder, is the holder of the legal title of a five-elevenths undivided interest in the land conveyed to her for the use and benefit of the plaintiff and that this interest be sold by commissioners. The defendants excepted and appealed upon errors assigned.

*J. P. & J. H. Zollicoffer, Perry & Kittrell and Kittrell & Kittrell for plaintiff.*

*S. P. McDuffee and Thomas M. Pittman for defendants.*

ADAMS, J. The action is prosecuted by the plaintiff for the purpose of impressing a trust, for its benefit as receiver, upon the town lot described in the deed from Gholson to Mrs. Crowder. The equitable doctrine upon which the relief is sought is not questioned. If R. B. Crowder held the proceeds of the discounted note as a trustee for the Farmers and Merchants Bank a trust resulted by operation of law for the benefit of the bank and under the doctrine of implied trusts the fund could be followed into any property into which it was converted or invested unless affected by the rights of a bona fide purchaser for value, without notice. If, on the other hand, he discounted the note with fraudulent intent he was a trustee *ex maleficio,* and against his fraud a court of equity would afford relief. "In such cases," says Bispham, "the interference of courts of equity is called into play by fraud as a distinct head of jurisdiction; and the complainant's right to relief is based upon that ground, the defendant being treated as a trustee merely for the purpose of working out the equity of the complainant." Principles of Equity, 149. In *Massey v. Alston,* 173 N. C., 215, it is said: "A court of equity is not bound to wrest the property

from the wrongdoer by a rescission, but may mould its decree to the particular and controlling equity of the case and the real and substantial rights of the parties. . . . Equity makes use of the machinery of a trust for the purpose of affording redress in cases of fraud, and will follow the property obtained by a fraud in order to remedy the wrong, and only stops the pursuit when the means of ascertainment fails or the rights of bona fide purchasers for value, without notice of the fraud or trust, have intervened." *Campbell v. Drake,* 39 N. C., 94; *Edwards v. Culberson,* 111 N. C., 342; *Mfg. Co. v. Summers,* 143 N. C., 102; *Bank v. Waggoner,* 185 N. C., 297.

While not contesting this equitable doctrine, the defendants say that Mrs. Crowder was an innocent purchaser of the property for value, without notice of any fraud or trust. It was some time after she had endorsed and delivered to her husband the check for $2,500 that she first heard of his alleged malfeasance. Indeed, his Honor plainly told the jury that there was neither allegation nor contention that she knew her husband had misappropriated the bank's money by investing it in her land. He gave the additional instruction that in no view of the law could Mrs. Crowder be an innocent purchaser for value "so far as the $2,500 is concerned"; that according to her admission her husband had paid $2,500 as a part of the price of the land, and that in contemplation of law the payment was a gift. Their relation raised the presumption of a gift *pro tanto* when he purchased the land and had the title conveyed to his wife; but this is a presumption of fact which is not conclusive, but rebuttable. *Arrington v. Arrington,* 114 N. C., 116; *Sherrod v. Dixon,* 120 N. C., 60; *Evans v. Cullens,* 122 N. C., 55; *Singleton v. Cherry,* 168 N. C., 402; *Nelson v. Nelson,* 176 N. C., 191; *Anderson v. Anderson,* 177 N. C., 401; *Tire Co. v. Lester,* 190 N. C., 411, 416.

The instruction complained of was evidently given upon the principle that there was no evidence to rebut the presumption that the money was a gift. Though the testimony upon which the defendants rely as tending to repel the presumption of a gift was not full or comprehensive, we cannot hold as a matter of law that it should not have been submitted to the jury. Mrs. Crowder testified: "I have seen this check for $2,500 before; it was given to me to pay on the Southerland Stables, by my father, Melville Dorsey. I endorsed the check and gave it to Mr. R. B. Crowder to pay $2,500 on the Southerland Stables. At the time the lot was bought in November, 1922, my father paid $3,000 on the purchase price, and this was to pay the balance of $2,500 to complete the $5,500 purchase price. I was to return to R. B. Crowder the $2,500 that he had paid on the property at the time it was purchased."

And her father said: "The reason I did not furnish the entire $5,500 at that time instead of only $3,000 was because I could not do it . . . I paid for it in the final. . . . The reason I did not pay for it earlier was because I had a very sick daughter in the hospital, and was under a great deal of expense, and had my taxes to pay for two years, and it was using all of the ready money I had, and as soon as I found out that I had money ahead, I paid it. The reason I was paying this was for it to be my daughter's separate estate."

In our opinion this testimony, together with other circumstances, is some evidence that it was understood between the parties that the money advanced by R. B. Crowder should be treated as a loan and not as a gift. For this reason there must be a

New trial.