FLORENCE JARRETT ET AL. *v.* GAY GREEN, EXEC., ET AL.

(Filed 9 March, 1949.)

1. **Executors and Administrators § 13a: Trusts § 20: Wills § 46—Beneficiary is entitled to pay debts of estate in order to prevent sale of unique property to make assets.**

The will in question set up a trust fund for the benefit of testator's widow and nephew, the *corpus* to be paid the nephew upon the widow's death. Included in the estate was stock in a close corporation, and testator expressed his intent that this stock should not be sold unless necessary to pay debts, cost of administration or inheritance taxes, and provided further that in case of sale it should be offered to the stockholder-directors of the corporation at the value determined for inheritance-tax purposes, unless a better bid were obtainable. Plaintiff beneficiaries introduced evidence that they had made suggestions as to how the stock might be saved to the trust estate and that the nephew had offered to deposit money to take care of the debts of the estate in order to leave the stock undisturbed, and permitting the inference, considering the evidence in the light most favorable to plaintiffs, that the price at which the executor had sold some of the stock was greatly less than its market value. *Held:* The executor was not only enjoined specifically by testator to retain the stock if feasible but was also under fiduciary duty to the beneficiaries to do so, and in an action to vacate the sale of the stock and to require an accounting, plaintiffs' evidence was sufficient as against demurrer.

**2. Wills § 31—**

The intent of the testator is his will.

**3. Trusts § 5d—**

In this action to establish a constructive or a resulting trust in certain stock sold by executor, to recover the property and have an accounting, the evidence *is held* sufficient as against demurrer to show that the purchasers of the stock were not innocent purchasers for value without notice.

**4. Equity § 2: Limitation of Actions § 2e—**

An action by the beneficiaries of a trust to establish a constructive or resulting trust in certain stock sold by the executor-trustee, to recover the property, and for an accounting, is not barred by laches or the statute of limitations if brought within ten years from the date of the accrual of the cause of action. G.S. 1-56.

APPEAL by plaintiffs from *Clement, J.,* October Term, 1948, of BUN-COMBE.

Civil action to establish trust, vacate sale of corporate stock, and require an accounting.

On 7 November, 1941, J. N. Jarrett of Buncombe County died testate leaving Gay Green executor and trustee of his estate. A trust was set up, the income from which was to go to the testator's widow for a period of ten years; thereafter $200 a month was to be paid to her for life and the excess paid to his nephew, Earl Messer; the trust was to terminate at the death of his widow and the principal paid over to Earl Messer. Should Earl Messer not be living when entitled to receive any interest or principal, then such income or principal was to go to his nephew, Rex M. Jarrett.

The testator owned 392 shares of stock in the Imperial Life Insurance Company at the time of his death. He was particularly interested in preserving this stock to his trust estate, and withheld from the Trustee any power to sell "said stock except with the consent of the beneficiaries of this trust, or such of them as may be legally capable of giving their consent."

In Item 6 of the will it is provided that if it should "be necessary to dispose of any portion of my stock in the Imperial Life Insurance Company . . . to complete the payment of the debts of my estate, costs of administration, or succession or inheritance taxes . . . then said executor . . . is authorized to do so. In such event said stock proposed to be sold shall first be offered to the stockholders of Imperial Life Insurance Company who are then directors thereof. . . . If said offer is made within two years from the date of my death it shall be at the value per share determined for inheritance tax purposes. . . .

"The intent and purpose of these provisions is to enable my executor or trustee to dispose of my stock in said corporation, if it is plainly wise

to do so, but at the same time to prevent said stock from passing outside of the ownership of those principally interested in said corporation, if they desire to purchase said stock and will pay as much therefor as can otherwise be obtained."

Shortly after the death of the testator, Gay Green qualified as executor of his estate and entered upon the duties of his office. On 9 March, 1943, he sold 86 shares of stock in the Imperial Life Insurance Company to pay debts of the estate, costs of administration and inheritance taxes, at the price of $225 per share. 40 shares were issued to Gay Green; 40 shares to O. E. Starnes, and 6 shares to J. Warlick, all of whom were then stockholders and directors of the Imperial Life Insurance Company. Thereafter, on 8 September, 1943, the executor sold six additional shares of this stock at the same price, issuing 2 shares to himself; 2 shares to O. E. Starnes and 2 shares to J. Warlick.

However, prior to the sale of any of this stock, Earl Messer had protested to the executor against its disposal, offering many suggestions as to how it might be saved to the trust estate, and finally in a conference during the first week of March, 1943, said: "Now, Mr. Green, if they won't accept this offer that I have made you, I will deposit the money with you to take care of the debts of the Jarrett estate, and we will just leave the stock where it is. . . . Mr. Green replied to this that he would let me know and we adjourned our conference from Mr. Wright's office. . . . We found a source of money, several sources, where we could get it. Then I made Mr. Green a final offer that we would put up the money. . . . I was ready, able and willing to turn it over to Mr. Green, as executor, for the purpose of paying off the debts and costs of administration, including succession and inheritance taxes. . . . I told him that I was willing to do so. . . . Mr. Green said he would take it up with his directors and let me know. . . . He did not let me know anything, . . . or what he had decided to do."

On 16 March, 1943, just a week after the sale of the first 86 shares of the stock, counsel for the defendant Green in a letter to counsel for Earl Messer, used this language: ". . . it looks now as though we will probably have to submit the question to the court for an interpretation of the section of the will dealing with the sale of stock. Under the circumstances, of course, it would not be possible to do anything with regard to any of the stock until the controversy is determined."

There was other evidence, taken in the light most favorable to the plaintiffs, tending to show that the value of the stock, at the time of its transfer in March and September, 1943, was far in excess of the amounts for which it was sold.

The defendants denied liability, and pleaded laches and the three-year statute of limitations.

From judgment of nonsuit at the close of plaintiffs' evidence, they appeal, assigning errors.

*Smathers & Meekins and W. R. Francis for plaintiffs, appellants.*

*George H. Wright, Harkins, Van Winkle & Walton and Williams & Williams for defendants, appellees.*

STACY, C. J.    The question for decision is whether the evidence suffices to carry the case to the jury in the face of the demurrers.   The trial court answered in the negative.   We are inclined to a different view.

The executor was well advised "to submit the question to the court for an interpretation of the section of the will dealing with the sale of stock." He was ill-advised when, apparently without the knowledge of his own counsel, he sold the 86 shares on 9 March, 1943, at the price of $225 per share.   Not only was he enjoined specifically by the testator to retain the stock if feasible, but he was also under a fiduciary duty to the plaintiffs to prevent its sale, if reasonably within his power.   *Van Alstyne v. Brown,* 77 N.J.Eq. 455, 78 Atl. 678; Scott on Trusts, Vol. 2, Sec. 176. The value determined for inheritance-tax purposes was the price fixed for offering the stock to the stockholders of the Imperial Life Insurance Company, who were then directors, in the absence of a better obtainable bid.   This is made manifest by the last paragraph of Item 6 of the will. Note that in this last paragraph the testator spells out his intent, which after all is his will.   *Bank v. Corl,* 225 N.C. 96, 33 S.E. 2d 613; *Cannon v. Cannon,* 225 N.C. 611, 36 S.E. 2d 17.   The stock was without general market price because closely held and none offered for sale.

Initially, however, there was to be no sale of the stock except in case of necessity, or plain wisdom, and under the plaintiffs' evidence the occasion of necessity was nonexistent at the time of the purported sales.   At least the permissible inferences deducible therefrom suffice to overcome the demurrers.   *Leno v. Ins. Co.,* 228 N.C. 501, 46 S.E. 2d 471.   Hence, we do not reach the terms of the will under which the executor was authorized to sell to stockholder-directors of the Insurance Company.

We refrain from discussing the evidence as the defendants are yet to be heard.   It is suggested on behalf of Starnes and Warlick that they are innocent purchasers for value without notice.   Suffice it to say there is evidence to support a contrary finding.

The action is to establish a constructive or resulting trust, to recover the property, and for an accounting.   *Bank v. Crowder,* 194 N.C. 312, 139 S.E. 601; *Costner v. Cotton Mills Co.,* 155 N.C. 128, 71 S.E. 85; *Lemly v. Atwood,* 65 N.C. 46.   It readily survives the plea of laches and the applicable ten-year statute of limitations.   G.S. 1-56; *Creech v. Creech,* 222 N.C. 656, 24 S.E. 2d 642; *Teachey v. Gurley,* 214 N.C. 288,

199 S.E. 83. In protesting the nonsuit, counsel for plaintiffs say, "We are entitled to pursue the hunt so long as we can track the fox; and not until we lose the trail are we obliged to abandon the chase, call our dogs and go home."

There was error in sustaining the demurrers to the plaintiffs' evidence. Reversed.