Capps v. Blondeau, 2010 NCBC 8.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 16486

MARTHA B. CAPPS, by and through her )
Guardian ad Litem, Bruce L. Capps, )
                Plaintiff )
                 )
        v. )
                 )
HAROLD EARL BLONDEAU; R.J. )
BLONDEAU; NEAL WILLIAM KNIGHT; )
ANNE LOUISE KNIGHT; HELEN )
SOUTHWICK KNIGHT; MORGAN )
KEEGAN & COMPANY, INC.; MARVIN L. )
BAKER FAMILY FOUNDATION, INC. and )
REGIONS BANK, d/b/a REGIONS )
MORGAN KEEGAN TRUST FSB, )
                Defendants )

**OPINION AND ORDER ON
MOTIONS TO DISMISS**

THIS CAUSE, designated a complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, all references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, by order of the Chief Special Superior Court Judge for Complex Business Cases, now comes before the court for determination of Motions to Dismiss (the "Motion(s)") propounded in this matter by Defendants R.J. Blondeau, Neal William Knight, Jr. ("Neal Knight"), Anne Louise Knight and Helen Southwick Knight (the latter two, collectively, the "Knight Defendants"), pursuant to the provisions of Rule 12(b)(6), North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, having considered the Motions, the arguments and briefs in support of and in opposition to the Motions, and appropriate matters of record, CONCLUDES that the Motion by Defendant Neal Knight should be DENIED; and the Motions by R.J. Blondeau and the Knight Defendants should be GRANTED in part and DENIED in part, for the reasons stated herein.

I.

PROCEDURAL HISTORY

[1]     On October 12, 2007, Martha B. Capps ("Capps"), through her Guardian ad Litem, Bruce L. Capps, filed this civil action against the moving Defendants, and others, alleging misconduct in connection with her assets. The original verified Complaint subsequently was amended pursuant to Order dated April 30, 2008.[1]

[2]     Plaintiff alleges Claims against the Defendant Neal Knight for (a) Breach of Fiduciary Duty – Fourth Cause of Action; (b) Constructive Fraud – Fifth Cause of Action; (c) Fraud and Deceit – Sixth Cause of Action; (d) RICO[2] Violation – Tenth Cause of Action; (e) Civil Conspiracy – Eleventh Cause of Action; (f) Revocation of Gifts – Fifteenth Cause of Action; (g) Constructive Trust – Sixteenth Cause of Action; (h) Equitable Action for Accounting – Seventeenth Cause of Action and (i) Preliminary Injunction – Eighteenth Cause of Action.

[3]     Plaintiff alleges Claims against Defendant R.J. Blondeau and the Knight Defendants for (a) Unjust Enrichment/Quantum Meruit – Plaintiff's Fourteenth Cause of Action; (b) Revocation of Gifts – Plaintiff's Fifteenth Cause of Action and (c) Constructive Trust – Plaintiff's Sixteenth Cause of Action.

---

[1] As amended, the Complaint contains some ninety-six pages having 294 paragraphs, with subparagraphs, and alleging twenty-two Causes of Action ("Claims").
[2] The Racketeer Influenced and Corrupt Organizations Act, G.S. Chapter 75D ("RICO").

[4]     Plaintiff also seeks remedies against other non-moving Defendants. The non-moving Defendants are unaffected by the Motions.

[5]     There are extant motions by Defendant Harold Earl Blondeau ("Hal Blondeau") and Defendant Morgan Keegan & Company, Inc. ("Morgan Keegan") to stay this judicial proceeding and to compel arbitration of Plaintiff's Claims against them, pursuant to G.S. 569.7(a) and 569.7(g) (the "Arbitration Motions"). The Arbitration Motions have been denied in a separate Order by the court.

[6]     The Motions seek dismissal of this civil action with regard to each of the moving Defendants. The Motions have been fully briefed and argued, and are ripe for determination.

II.

FACTUAL BACKGROUND

Among other things, the Complaint alleges that:

[7]     In 1988, Capps, a resident of North Carolina,[3] learned that she would be the principal beneficiary of her aunt Anne Kyle's ("Kyle") multimillion dollar estate.[4] Kyle, a resident of Palm Beach, Florida, had inherited a large estate from her late husband. Capps was Kyle's closest family member and provided Kyle with friendship and comfort for many years prior to Kyle's death. In anticipation of Kyle's death, and upon professional advice, Kyle established two trusts under Florida law, the Anne Kyle GST and the Anne Kyle Irrevocable Trust (collectively, the "Trusts").

---

[3] Compl., ¶ 1.
[4] *Id.*, ¶¶ 19-20.

[8]     From at least 1988 and up until the events complained of in the Complaint, Hal Blondeau, R.J. Blondeau's father, was Capps' financial and investment advisor. During those years, Capps reposed trust and confidence in Hal Blondeau's advice.

[9]     Defendants Hal Blondeau and Neal Knight were closely involved in advising Capps with regard to the Trusts.  At times material, Hal Blondeau was a stockbroker and financial advisor with a respected brokerage house, and Neal Knight was a partner in a prominent law firm in Palm Beach, Florida.  Capps trusted these men with intimate knowledge concerning her personal affairs.  Each was involved in crafting Kyle's estate plan, which was specifically drafted to address Plaintiff's domestic situation and her special concerns.[5]

[10]     After Kyle's death in 1989,[6] the Trusts were funded as anticipated.[7]  Hal Blondeau's then employer, A.G. Edwards, served as successor trustee of the Trusts from 1989 until 1997.[8]  Thereafter, Hal Blondeau left his employment with A.G. Edwards and joined Morgan Keegan as a partner.  He advised Capps to move her accounts and the administration of the Trusts to Morgan Keegan.  She did so, and Morgan Keegan was appointed successor trustee of the Trusts.  Eventually, Regions Bank, d/b/a Regions Morgan Keegan Trust FSB ("Regions"), became the successor trustee.[9]

[11]     During the time A.G. Edwards served as Trustee, it failed to pay net income to Capps as required under the Trusts, and this amount of undistributed net

---

[5] *Id.,* ¶¶ 22, 45.
[6] *Id.,* ¶ 28.
[7] Plaintiff alleges the Trusts then contained total assets of approximately four million dollars ($4,000,000). *Id.,* ¶ 36.
[8] *Id.,* ¶ 35.
[9] *Id.,* ¶ 41.

income grew to over a million dollars ($1,000,000).[10] Defendants Hal Blondeau and Neal Knight were materially involved in the consideration of the legal issues surrounding the undistributed, accumulated net income.[11] On several occasions, they met with and/or discussed these issues with Gerald Thornton ("Thornton"), Plaintiff's estate planning attorney in Raleigh, North Carolina, providing him with information as Capps' trusted agents regarding her estate plan, her wishes and her concerns.[12]

[12]    On August 21, 2001, Capps executed several estate documents.[13] Hal Blondeau was appointed under the financial Power of Attorney to serve as Capps' attorney-in-fact and fiduciary, and Neal Knight was selected to serve as first successor in the event Hal Blondeau failed for any reason to serve in such capacity.[14]

[13]    Since at least September 2001, Capps has had a slow but progressive decline in her memory. In September 2005, she was diagnosed with dementia, most likely related to Alzheimer's disease. She currently resides in an assisted living facility.[15]

[14]    In 2001, shortly before Capps executed the estate planning documents drafted by Thornton,[16] and unbeknownst to Capps or Thornton,[17] Hal Blondeau and Neal Knight conspired to create and fund the Martin L. Baker Family Foundation, Inc.

---

[10] *Id.,* ¶ 38.
[11] *See*, e.g., *id.* at ¶¶ 49-50. *See also id. at* ¶¶ 45-47, 51-55.
[12] *Id.,* ¶¶ 49-50.
[13] *Id.,* ¶ 54.
[14] *Id.,* ¶¶ 55, 175.
[15] *Id.,* ¶ 2.
[16] *Id.,* ¶ 56.
[17] *Id.,* ¶ 56.

(the "Foundation"), a Florida non-profit charitable foundation.[18]  On August 28, 2001,[19] without Capps' or Thornton's knowledge,[20] the Foundation initially was funded by a transfer from Capps' personal assets to the Foundation in the amount of $1,775,000. This transfer constituted approximately 80% of Capps' then-existing personal assets.[21] In order to generate the transferred funds, certain stocks and securities held as Trust assets were transferred improperly to Capps' personal account at Morgan Keegan[22] and subsequently liquidated.[23]  The monies then were wire-transferred directly from Capps' account to an account owed by the Foundation on the order of and at the direction of Hal Blondeau.[24]

[15]    Thereafter, in eight other separate transactions, the last of which occurred within three years of filing of the Complaint on July 8, 2005, other assets of Capps improperly were transferred to the Foundation.[25]  Hal Blondeau convinced Capps that these transactions were in her best interests.[26]

[16]    Hal Blondeau, Neal Knight and others purposefully and unlawfully used and converted Capps' assets for their own personal purposes, in violation of numerous duties owed to her.  Defendants Hal Blondeau and Neal Knight actively conspired

---

[18] *Id.,*¶ 12. Capps alleges that Foundation was set up by Neal Knight on or about July 25, 2001; and that Neal Knight has been and is the vice president and registered agent of the Foundation.  *Id.*, ¶ 12, Ex. G. She also alleges that Hal Blondeau is the president of the Foundation and keeps the books and records of the Foundation at his personal home in Raleigh, Wake County, North Carolina.  *Id.*  Capps believes that Hal Blondeau incorporated the Foundation and Neal Knight drafted and prepared the Foundation's Articles of Incorporation.  *Id.*, ¶ 56, Ex. G.
[19] *Id.*, ¶ 59.
[20] *Id.*, ¶ 62.
[21] *Id.*, ¶ 61.
[22] *Id.*, ¶ 57.
[23] *Id.*, ¶ 58.
[24] *Id.*, ¶ 59.
[25] *Id.,* ¶¶ 66, 71, 79, 82, 86, 90, 115, 120.
[26] *See*, e.g., *id.* at ¶¶ 66, 71, 79, 82, 86, 90, 115, 120.

against, deceived and defrauded Plaintiff and failed to inform her fully and fairly of the consequences of their various acts.[27]

[17] The Foundation was of no meaningful benefit to Capps or her family and was completely under the control of the Defendants Hal Blondeau and Neal Knight and their children. Contributions from the Foundation primarily went to interests that benefited one or more of the moving Defendants and not Plaintiff or her family.[28] By way of example, Defendants Hal Blondeau and Neal Knight conspired to obtain Foundation disbursements totaling at least $85,057.50 for R.J. Blondeau and the Knight Defendants or their respective undergraduate and law school educations, the last disbursement occurring on March 24, 2005.[29]

[18] In addition to these activities, Defendant Neal Knight claims to have traveled from Florida to North Carolina for purported business with Plaintiff Capps. However, he did not meet with Capps at any time during his visit to North Carolina. Nonetheless, Hal Blondeau, then acting as Plaintiff's attorney-in-fact, reimbursed Neal Knight's expenses in the amount of $1,072.19, as recently as February 24, 2006.[30]

[19] Payments from Capps' assets received by or for the benefit of Defendants R.J. Blondeau and the Knight Defendants, all adults in college or law school, resulted from the fraudulent schemes of their respective fathers. They accepted such payments despite not having any personal relationship with Capps.

---

[27] *Id.,* ¶¶ 144-153, 166-179.
[28] *Id.,* ¶¶ 137-139.
[29] *Id.,* ¶¶ 80, 119.
[30] *Id.,* ¶ 128.

[20]     The payments to or in behalf of Helen Knight took place between September 10, 2001, and January 27, 2003.[31]  The payments to or in behalf of Ann Knight took place between September 9, 2002, and March 24, 2005.[32]  The payment to or in behalf of R.J. Blondeau took place on or about May 15, 2003.[33]

III.

### THE MOTIONS TO DISMISS – RULE 12(b)(6)

[21]     The Motions seek dismissal of the Complaint, in part or in whole, as to the moving Defendants, pursuant to Rule 12(b)(6).  Dismissal of an action pursuant to Rule 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted.

[22]     In deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted.  *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[23]     A complaint fails to state a claim upon which relief can be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).  However, a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it (a) does not give sufficient notice to the defendant of the nature and basis of the plaintiff's claim or (b) appears beyond a reasonable doubt that the plaintiff could not prove any set

---

[31] *Id.*, ¶¶ 67-68, 74, 77-78, 78, 235.
[32] *Id.*, ¶¶ 77-78, 84, 93, 114, 118, 236.
[33] *Id.*, ¶¶ 80, 234.

of facts in support of his claim that would entitle him to relief. *Sutton v. Duke*, 277 N.C. at 108.

[24] When a Rule 12(b)(6) motion is denied, by subsequently utilizing discovery a moving defendant may be able to ascertain more precisely the details of plaintiff's various claims and whether the plaintiff can prove facts which will entitle plaintiff to have a jury decide the merits of one or more of the stated claims. *Sutton v. Duke*, 277 N.C. at 98. If there then exists a good faith contention that the plaintiff cannot prove sufficient facts as to any such claim, the defendant may seek relief through good-faith utilization of Rule 56 or other suitable procedural device.

[25] In this case, the moving Defendants raise several issues that they argue should cause dismissal of one or more of Plaintiff's various Claims. However, the primary thrust of their respective arguments focuses upon the applicable statutes of limitations as to each of the Claims.

[26] The expiration of a statute of limitations may be a basis for dismissal of a civil claim by way of a Rule 12(b)(6) motion if the face of the complaint establishes that plaintiff's claim is time-barred. *Toomer v. Branch Banking and Trust Co.*, 171 N.C. App. 58, 65 (2005). When determining the applicable statute of limitations, the courts should be guided by the principle that the statute of limitations is not determined by the remedy sought, but by the substantive right asserted. *Baars v. Campbell University, Inc.*, 148 N.C. App. 408, 414 (2002).

A.

Motion by Neal Knight

[27]    The Motion by Defendant Neal Knight seeks dismissal of Plaintiff's Claims against him on three grounds.  He contends that the allegations of the Complaint establish as a matter of law that (a) either the three-year statute of limitations or four-year statute of repose that applies to Plaintiff's various Claims had expired as to him prior to the filing of this action;[34] (b) at certain material times a fiduciary relationship did not exist between him and Capps and (c) Capps' Complaint does not allege a predicate act of racketeering activity sufficient to support a North Carolina RICO Claim (Capps' Tenth Claim).

1.

Statutes of Limitation and Repose

[28]    In support of the limitations and repose issues raised by his Motion, Neal Knight relies in large measure upon *Carlisle v. Keith*, 169 N.C. App. 674 (2005); *Livingston v. Adams Kleemeier Hagan Hannah & Fouts, PLLC*, 163 N.C. App. 397 (2004) and *Baars,* 148 N.C. App. 408.  He argues that his relationship with Capps was that of attorney and client, and that the cited cases stand for the proposition that under such circumstances, as they are stated in the Complaint, the Plaintiff's Claims against

---

[34] In his Reply Memorandum, Neal Knight also raises an alternative argument that the statute of limitations for a RICO claim is five years, and that any RICO liability he might have to Capps should be limited to transactions occurring within five years of filing of this civil action.  The court discusses that contention *infra*, ¶ 47.

him are barred either by a three-year statute of limitations[35] or a four-year statute of repose.[36]

[29]    Plaintiff responds that her various Claims against Neal Knight arise from his violations of trust and confidence she reposed in him, and that those violations go beyond the attorney-client relationship. She contends that the substance of her Claims is grounded in constructive fraud rather than legal malpractice; and that the applicable statute of limitations is ten years[37] rather than three. Accordingly, she contends that the limitations period had not expired at the time of filing.

[30]    The holding in *Hunter* v. *Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 482 (2004), is instructive with regard to what must be alleged to support a claim for relief on a theory of constructive fraud. The court stated that:

> A claim of constructive fraud does not require the same rigorous adherence to elements as actual fraud (citation omitted). Constructive fraud differs from actual fraud in that it is based on a confidential relationship rather than a specific misrepresentation (citation omitted). A constructive fraud complaint must allege facts and circumstances (1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff (citation omitted). Further, an essential element of constructive fraud is that defendants sought to benefit themselves in the transaction (citation omitted). Put simply, a plaintiff must show (1) the existence of a fiduciary duty, and (2) a breach of that duty.

[31]    In the instant matter, Plaintiff has pled specific facts and circumstances that she contends created a relationship of trust and confidence between her and her alleged fiduciaries, Defendants Hal Blondeau and Neal Knight, as well as the facts and

---

[35] G.S. 1-52.
[36] G.S. 1-52(c).
[37] G.S. 1-56.

circumstances surrounding the transactions that wrongfully benefited these Defendants and their respective families.  The Complaint alleges that the transactions complained of arose out of and were able to occur because of the relationship of confidence and trust that Martha Capps had with Defendants Neal Knight and Hal Blondeau.

[32]    In support of her limitations argument, Plaintiff relies primarily upon *Toomer,* 171 N.C. App. 58, for the proposition that the limitations period for a constructive fraud claim and for a fiduciary breach claim that rises to the level of constructive fraud is ten years.  *Toomer* was decided subsequent to *Carlisle*, and held that:

> "When determining the applicable statute of limitations, we are guided by the principle that the statute of limitations is not determined by the remedy sought, but by the substantive right asserted by plaintiffs."  *Baars v. Campbell Univ., Inc.*, 148 N.C. App. 408, 414, 558 S.E.2d 871, 875, *disc. review denied,* 355 N.C. 490, 563 S.E.2d 563 (2002).  Allegations of breach of fiduciary duty that do not rise to the level of constructive fraud are governed by the three-year statute of limitations applicable to contract actions contained in N.C. Gen. Stat. § 1-52(1) (2003). . . .   However, "[a] claim of constructive fraud based upon a breach of fiduciary duty falls under the ten-year statute of limitations contained in N.C. Gen. Stat. § 1-56 [2003]."  *Nationsbank of N.C. v. Parker*, 140 N.C. App. 106, 113, 535 S.E.2d 597, 602 (2000).[38]

> *Toomer*, 171 N.C. App. 58, at 66-67.

[33]    The court is forced to conclude that as to Defendant Neal Knight, the Plaintiff properly has pled facts sufficient to state a Claim for constructive fraud and breach of fiduciary duty that rises to the level of constructive fraud.  As to such Claims,

---

[38] Capps argues that *Baars* does not stand for the proposition that a three-year statute of limitations applies to a properly stated claim for constructive fraud.  Pl. Resp. Br. Opp. Mot. Dismiss, 11-12.  Rather, she argues that the court in *Baars* concluded that as the claim was pled in that particular case, notwithstanding its characterization, in substance was one of legal malpractice and not constructive fraud.  Consequently, the three-year limitations statute applied there.  *Id*.

under the circumstances alleged in the Complaint, the applicable statute of limitations is ten years, as provided by G.S. 1-56. Furthermore, the Plaintiff's allegations of breach of fiduciary duty and constructive fraud pervade the allegations of Plaintiff's substantive Fourth, Fifth, Sixth, Eleventh, Sixteenth and Seventeenth[39] Claims against Defendant Neal Knight. Accordingly, as to each of them, for purposes of the Rule 12(b)(6) Motion, a ten-year statute of limitations applies. In this case, the Plaintiff's Fifteenth and Eighteenth Claims against Neal Knight seek remedies that are ancillary to Plaintiff's substantive Claims, and they are controlled by the ten-year statute that applies to the substantive Claims.

[34] Consequently, the court CONCLUDES that, for purposes of the Motion, a ten-year statute of limitations applies to each of the Plaintiff's Claims against Defendant Neal Knight, and the alleged wrongful actions complained of by Plaintiff in the Complaint took place within the requisite limitations period.

2.

Substantive Allegations of Fiduciary Relationship with Capps

[35] Defendant Neal Knight contends that the fact that at times he had an ongoing attorney-client relationship with Capps does not support a conclusion that every act he undertook with regard to Capps' property or estate was done in the context of a fiduciary relationship between them. He cites *In re Gertzman*, 115 N.C. App. 634, 638 (1994), for the proposition that the act of rendering legal services on one or more

---

[39] The Sixteenth Claim seeks imposition of a constructive trust, and the Seventeenth Claim seeks an equitable accounting. In the context of this case, the statute of limitations for each of those Claims is ten years. *See Tyson v. N.C. Nat'l Bank*, 305 N.C. 136, 141 (1982); *Jarrett v. Green*, 230 N.C. 104, 107 (1949). Consequently, the Sixteenth and Seventeenth Claims were timely, notwithstanding the respective parties' arguments as to which statute of limitations applies to allegations of breach of fiduciary duty and constructive fraud.

occasions does not of itself create a fiduciary relationship that endures for an indefinite period of time. He argues that some of the things complained about in the Complaint took place after any attorney-client relationship between him and Capps ended,[40] and therefore any subsequent actions he may have taken with regard to Capps' property did not violate a fiduciary duty and cannot support Claims based upon constructive fraud. Knight contends the court should grant his Motion with regard to any actions he is alleged to have taken outside the attorney-client relationship between him and Capps.

[36]    On the other hand, Capps contends that the thrust of her Claims is that a fiduciary relationship existed between Plaintiff on the one hand, and Hal Blondeau and Neal Knight on the other, that grew out of an ongoing relationship of trust and confidence; and that as to Neal Knight, the Plaintiff's Claims are not based solely upon the attorney-client relationship between him and Capps. Plaintiff points out that the Complaint does not allege a legal malpractice action, but rather an action based upon violation of a trusting confidential relationship between Capps and Hal Blondeau and Neal Knight.[41]

[37]    Plaintiff also contends that because the Complaint alleges that Hal Blondeau and Neal Knight conspired with respect to taking Capps' property and formed a confederacy for the purpose of defrauding Capps to their personal benefit, they are jointly and severally liable for the acts of each other in furtherance of the conspiracy, citing *State ex rel. Long v. Petree Stockton, LLP*, 129 N.C. App. 432, 447 (1998). Consequently, she argues that Defendant Neal Knight also is clothed with Plaintiff's allegations as to Hal Blondeau, and that the existence of an ongoing attorney-client

---

[40] Mem. Supp. Mot. Dismiss by Knight Defs., 10.
[41] Pl.'s Reply Br. Opp. Mot. Dismiss by Knight Defs. and Def. R.J. Blondeau, 17.

relationship is not necessary to Plaintiff's statement of Claims against Neal Knight. The court is forced to agree.

[38] Further, in this Rule 12(b)(6) setting, the court is unable to determine as a matter of law whether every act alleged to have been done by Neal Knight did or did not happen in the course of a fiduciary relationship between Capps and Neal Knight; or whether it took place in the context of any alleged ongoing confederacy between Neal Knight and Hal Blondeau. On these issues, as the Claims move forward the Plaintiff will have the burden of proving the various material allegations in the Complaint. Whether she can do that remains to be seen. For purposes of the Motion, however, the allegations are taken to be true. The court therefore cannot determine as a matter of law that there is no set of facts which might be proven that would support Plaintiff's contention that Neal Knight was her fiduciary at material times.

[39] Consequently, the court CONCLUDES that the Complaint alleges sufficient facts to allow Plaintiff to proceed against Neal Knight upon her allegations that he owed her a fiduciary duty at the times complained of in the Complaint.

3.

RICO

[40] Defendant Neal Knight further contends that the Tenth Cause of Action stated in Plaintiff's Complaint fatally fails to allege at least one act of racketeering activity other than mail fraud, wire fraud or an offense involving fraud in the sale of securities, as required to support a RICO Claim.[42] He argues that Plaintiff has made only conclusory allegations of "garden variety fraud, breach of fiduciary duty and undue

---

[42] G.S. 75D-8(c).

influence,"[43] which he contends are not sufficient for purposes of a RICO Claim; and that the Tenth Cause of Action therefore should be dismissed pursuant to Rule 12(b)(6). He relies upon *State of NC ex rel Long v. Cooper*, 14 F. Supp. 2d 767, 771 (E.D.N.C. 1996), aff'd, 151 F. 3d 1030 (4th Cir. 1998).

[41]    Plaintiff concedes that a claim under the North Carolina RICO statute requires allegation and proof of a pattern of at least one act of racketeering activity that is not mail fraud, wire fraud or fraud in the sale of securities.[44]  However, Plaintiff argues that while moving Defendant has correctly cited the law, he has failed to analyze Plaintiff's claim under the North Carolina RICO statute.  Rather, Capps contends that the Complaint alleges a host of wrongs by Defendants Hal Blondeau and Neal Knight that would rise to the level of racketeering activity as defined by the RICO statute.

[42]    G.S. 75D-3(c)(1) defines "racketeering activity" as meaning

> to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit an act or acts which would be chargeable by indictment if such act or acts were accompanied by the necessary mens rea or criminal intent . . . .

[43]    The statute then lists a host of specified potential state and federal statutes the violation or attempted violation of which would constitute a racketeering activity.[45]

[44]    Plaintiff points out that her Tenth Cause of Action, alleging violations of the RICO statute, contains numerous specific factual allegations in support of her contention that Hal Blondeau and Neal Knight engaged in a pattern of wrongfully

---

[43] Defs.' Mem. Supp. Mot. Dismiss by Knight Defs., 11.
[44] G.S. 75D-3(b)-(c).
[45] G.S. 75D-3(c)(1)-(2).

obtaining Capps' property by "false pretenses" and "fraudulent means."[46] Plaintiff argues that the act of obtaining property fraudulently and by false pretenses is an indictable felonious criminal act in North Carolina,[47] and that a pattern of committing or attempting to commit such offenses would constitute an act of racketeering activity sufficient to support a RICO claim.

[45] Plaintiff further contends that the general allegations of the Complaint, which are incorporated by reference into the RICO Claim, also would support findings and conclusions that Hal Blondeau and Neal Knight were guilty of the indictable offenses of embezzlement by a fiduciary,[48] obtaining signatures by false pretenses,[49] exploitation of an elder adult or disabled adult,[50] unauthorized use of another's credit device,[51] financial transaction card theft[52] and financial transaction card fraud.[53] Capps argues that a pattern of committing or attempting to commit each of those wrongful acts also would constitute a racketeering activity for RICO purposes.

[46] The court concludes that the foregoing indictable acts alleged by Plaintiff to have been committed by Hal Blondeau and Neal Knight have potential, if proven, to constitute "racketeering activity" as defined by G.S. 75D-3(c)(1). Therefore the court CONCLUDES that the Complaint sufficiently alleges predicate activities as to Neal Knight that, if proven, would constitute one or more racketeering activities required by the RICO statute.

---

[46] Pl. Resp. Br. Opp. Mot. Dismiss, 19.
[47] G.S. 14-100.
[48] G.S. 14-90.
[49] G.S. 14-101.
[50] G.S. 14-112.2.
[51] G.S. 14-113.1.
[52] G.S. 14-111.9.
[53] G.S. 14-113.13.

[47]     In his Reply Memorandum,[54] Neal Knight also argues that since the statute of limitations for a RICO claim is five years,[55] any RICO liability he might have to Capps should be limited to any transactions occurring after October 13, 2002. However, a fair reading of the allegations of the Complaint support a determination, if proven, to the effect that Hal Blondeau and Neal Knight conspired with regard to any RICO racketeering activities, and that the various wrongful concerted actions with regard to Capps' properties continued within the five-year statute of limitations window. They would have exposure to joint and several liability for such activities.  *State ex rel. Long*, 129 N.C. App. at 447.  Therefore, Neal Knight's potential liability would not necessarily be measured only by his own activities, but also by the joint activities of him and Hal Blondeau.

[48]     The court therefore cannot determine as a matter of law that there is no set of facts which might be proven that would support Plaintiff's contention that Neal Knight has exposure to RICO liability to the Plaintiff as the Complaint is written. Consequently, the court CONCLUDES that the Complaint alleges sufficient facts to allow Plaintiff to proceed against Neal Knight upon her RICO allegations.

[49]     The court further CONCLUDES that at this stage Neal Knight is not entitled to a determination as a matter of law that his potential RICO liability to the Plaintiff is limited to transactions occurring more than five years prior to filing of the Complaint.

---

[54] Rep. Mem. Supp. Mot. Dismiss by Knight Defs., 11.
[55] G.S. 75D-9.

B.

Motions by R.J. Blondeau and the Knight Defendants

[50]    The Motions by Defendant R.J. Blondeau and the Knight Defendants seek dismissal of Plaintiff's Fourteenth, Fifteenth and Sixteenth Claims on two basic grounds. They argue that (a) the statute of limitations for the bulk of Plaintiff's Claims against them is three years and had expired prior to the filing of this action and that (b) because they had no relationship with Capps or her estate the Claims against them simply have no basis in law under the facts reflected in the Complaint.  The court will discuss Plaintiff's Fourteenth and Fifteenth Claims separately from her Sixteenth Claim.

1.

Unjust Enrichment/Quantum Meruit and Revocation of Gifts

a.

Statutes of Limitations

[51]    By way of her Fourteenth Claim, Plaintiff seeks recovery from Defendants R.J. Blondeau and the Knight Defendants for unjust enrichment and quantum meruit. By way of her Fifteenth Claim, she seeks revocation of the gifts of her assets to them or in their behalves made by their respective fathers.

[52]    Ordinarily the statute of limitations on claims for unjust enrichment and quantum meruit, and for revocation of gifts, is three years.  G.S. 1-52(9).

[53]    The court has concluded, *supra*, that a ten-year statute of limitations applies to the alleged constructive fraud and breach of fiduciary duty on the part of Defendants Hal Blondeau and Neal Knight.  Capps argues that by accepting the funds they received through Hal Blondeau and Neal Knight, the moving Defendants effectively

and wrongfully requested and voluntarily accepted tainted funds taken from Capps.[56] She argues that allowing them to retain the funds by virtue of a limitations defense would be "offensively unjust."[57]  Capps contends that her Claims against R.J. Blondeau and the Knight Defendants rest in constructive fraud engineered by their respective fathers, and that the applicable statute of limitations on her Claims against them should be the same as for their fathers, *i.e.*, ten years.

[54]    The Complaint in this case does not allege facts reflecting constructive fraud or breaches of any fiduciary duty by these individual Defendants.  Rather, in substance the Plaintiff alleges that these Defendants received money, either directly or indirectly, from their fathers; and that their fathers had received the money by wrongful action.

[55]    The court is not aware of any authority, and the Plaintiff has not cited any, that would apply a ten-year limitations period to these Claims simply because of the alleged wrongful conduct of Hal Blondeau and Neal Knight.  Rather, nothing else appearing, the three-year statute of limitations under G.S. 1-52 would apply to Plaintiff's Fourteenth and Fifteenth Claims.

[56]    In the alternative, Plaintiff further argues that if a three-year statute of limitations applies to any of the Claims against R.J. Blondeau or the Knight Defendants, those Defendants should be equitably estopped from asserting any expiration of the limitations period as a defense to Plaintiff's Claims.

[57]    In support of this position, the Plaintiff cites *Keech v. Hendricks*, 141 N.C. App. 649 (2000), which recognizes the concept of equitable estoppel with regard to a

---

[56] For example, Plaintiff alleges that the Knight Defendants "implicitly requested and voluntarily accepted" the funds.  Compl. ¶ 240.
[57] Pl.'s Resp. Br. Opp. Mot. Dismiss by Knight Defs. and Def. R.J. Blondeau, 23.

limitations defense.  There, the Court of Appeals held that as to a party ostensibly being estopped, the essential elements of equitable estoppel are (a) conduct that amounts to a false representation or concealment of material facts, or, at least, that is reasonably intended to convey an impression that the facts are otherwise than, and inconsistent with, those which the party afterward attempts to assert; (b) an intention or expectation that such conduct will be relied and acted upon and (c) actual or constructive knowledge of the real facts.  *Id.* at 653.  Further, as to a party claiming the estoppel, the elements are (a) lack of knowledge of the truth as to the facts in question; (b) reliance on the conduct of the party sought to be estopped and (c) a prejudicial change in position by the party claiming estoppel.  *Id.*

[58]     Here, the Complaint does not allege that these Defendants made false representations or concealed material facts with regard to the payments to them.  There also are no allegations that Capps in any way relied upon any conduct of either R.J. Blondeau or the Knight Defendants.  Rather, a fair reading of the Complaint simply reflects allegations that they directly or indirectly received payments effected by their fathers.  The Complaint fails to plead facts supporting the necessary elements of the equitable estoppel doctrine with regard to the limitations defenses raised by these Defendants.  The fact that they may have retained or used the payments complained of, in itself, does not support a conclusion that they should be equitably estopped from raising the three-year limitations period defensively in Plaintiff's Claims for unjust enrichment/quantum meruit and revocation of gifts.

[59]     Accordingly, a three-year limitations period applies to Plaintiff's Fourteenth and Fifteenth Claims.

[60]    The Complaint alleges that the last payment of Capps' money to or in behalf of Helen Knight was January 27, 2003.  The last payment of Capps' money to or in behalf of Anne Knight was March 24, 2005.  The only payment to or in behalf of R.J. Blondeau was on May 15, 2003.  This civil action was filed on October 12, 2007.  Consequently, the court CONCLUDES that (a) the three-year statute of limitations as to Plaintiff's Fourteenth and Fifteenth Claims against Helen Knight and R.J. Blondeau had expired at the time of filing of the Complaint.  With regard to the same Claims against Anne Knight, at least one payment to her is alleged to have taken place within three years of filing of the Complaint; and as to any such payment or payments to her, the limitations period had not expired at the time of filing of the Complaint.

b.

Substantive Basis in Law

[61]    These Defendants also contend that whether the statutes of limitations as to these Claims had expired at the time this action was filed is irrelevant because there are no facts alleged in the Complaint that would support a conclusion that they had any relationship with Capps or her estate or that they undertook in any way to defraud her or otherwise unlawfully deprive her of assets.  They contend these Claims simply have no basis in law under the facts reflected in the Complaint.

[62]    In response, and as previously discussed in this Order, the Plaintiff argues that by accepting the funds they received through Hal Blondeau and Neal Knight, these moving Defendants should be deemed to have effectively and wrongfully requested and accepted tainted funds taken from Capps.[58]  She contends they should not be allowed

---

[58] Compl., ¶ 240.

to retain the funds they received from their respective fathers because the funds were tainted by their fathers' constructive fraud.

[63]     The Complaint does not allege facts reflecting constructive fraud or breaches of any fiduciary duty by these individual Defendants.  Rather the Plaintiff alleges in substance that these Defendants received money, either directly or indirectly, from their fathers, and that their fathers had received the money by their constructively fraudulent wrongful acts.

[64]     Plaintiff cites no reported authority that supports the substantive merits of her Fourteenth or Fifteenth Claims as they are alleged; and the court CONCLUDES that as to such allegations, the Plaintiff can not prove facts in support of these Claims that would entitle her to relief.  *Sutton v. Duke*, 277 N.C. at 98.  Consequently, as to such Claims, the Complaint fails to state claims upon which relief can be granted with regard to Defendants R.J. Blondeau and the Knight Defendants.

2.

Constructive Trust

a.

Statute of Limitations

[65]     Plaintiff's Sixteenth Cause of Action seeks imposition of a constructive trust against Defendants R.J. Blondeau and the Knight Defendants.

[66]     Notwithstanding Defendants' contentions to the contrary, the statute of limitations for a constructive trust action is ten years.  *Tyson*, 305 N.C. 136; *Bowen v. Darden*, 230 N.C. 104 11 (1954) and *Jarrett*, 230 N.C. 104.

[67]     The facts and occurrences alleged in support of Plaintiff's Sixteenth Cause of Action against R.J. Blondeau and the Knight Defendants took place within ten years of the filing of the Complaint.  Accordingly, as to that Claim, court CONCLUDES that the statute of limitations had not expired, and the filing was timely.

b.

Substantive Basis in Law

[68]     By way of her Sixteenth Claim, the Plaintiff seeks to impose a constructive trust upon various Defendants, including R.J. Blondeau and the Knight Defendants.  By way of this Claim, Plaintiff seeks to recover all her property wrongfully received by the Defendants.

[69]     As to such Claim, Defendants contend that under the facts alleged in the Complaint, the Sixteenth Claim has no basis in law and that it should be dismissed.

[70]     In North Carolina, a constructive trust arises from

> a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holders acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust. . . . [A] constructive trust is a fiction of equity, brought into operation to prevent unjust enrichment through the breach of some duty or other wrongdoing. It is an obligation or relationship imposed irrespective of the intent with which such party acquired the property, *and in a well-nigh unlimited variety of situations. . . . [T]here is a common, indispensable element in the many types of situations out of which a constructive trust is deemed to arise.  *This common element is some fraud, breach of duty or other wrongdoing by the holder of the property, or by one under whom he claims*, the holder, himself, not being a bona fide purchaser for value. (Emphasis added.)
>
> *Wilson v. Crab Orchard Dev. Co., Inc., et al.*, 276 N.C. 198, 211-212 (1969).

[71]    The Complaint in this action alleges an ongoing and wrongful permanent taking of Capps' property by Hal Blondeau and Neal Knight, which taking rose to the level of constructive fraud.  It further alleges that some of that property ultimately was received by or in behalf of Defendants R.J. Blondeau and the Knight Defendants, and that they would not have received the property but for breaches of duty by those Defendants under whom they claim title to the property.  The Complaint alleges specific facts supporting these allegations.

[72]    Consequently, the court CONCLUDES that Plaintiff's Sixteenth Cause of Action alleges facts sufficient to state a claim against these moving Defendants upon which relief can be granted.

IV.

CONCLUSION

NOW THEREFORE, based upon the foregoing CONCLUSIONS, it is ORDERED that the Motions are DENIED in part and GRANTED in part, as follows:

[73]    The court is unable to conclude as a matter of law from the face of the Complaint that as to Defendant Neal Knight, the Plaintiff's Fourth, Fifth, Sixth, Eleventh, Fifteenth, Sixteenth, Seventeenth or Eighteenth Claims were untimely filed or that there is no set of facts that might be proven that would support each of the Claims.  Further, the allegations are sufficient to give Defendant notice of the nature and basis of each of the Claims.  Accordingly, the court cannot determine as a matter of law that there can be no liability on the part of Neal Knight to Plaintiff as to one or more of such Claims.

[74]    Consequently, as to Defendant Neal Knight, the Fourth, Fifth, Sixth, Eleventh, Fifteenth, Sixteenth, Seventeenth and Eighteenth Claims of the Complaint

state claims upon which relief can be granted. With regard to said Claims, the Rule 12(b)(6) Motion by Defendant Neal Knight should be, and it hereby is, DENIED.

[75] Without regard for whether they were timely filed, both the Plaintiff's Fourteenth and Fifteenth Claims fail to state a claim upon which relief can be granted as to Defendants R.J. Blondeau, Helen Knight and Anne Knight.

[76] Consequently, as to such Claims, the Rule 12(b)(6) Motions by R.J. Blondeau, Helen Knight and Anne Knight should be, and they hereby are, GRANTED; and the Plaintiff's Fourteenth and Fifteenth Claims hereby are DISMISSED as to Defendants R.J. Blondeau, Helen Knight and Anne Knight.

[77] The court is unable to conclude as a matter of law from the face of the Complaint that as to Defendants R.J. Blondeau, Helen Knight and Anne Knight, the Plaintiff's Sixteenth Claim was untimely filed or that there is no set of facts that might be proven that would support said Claim. Further, the allegations are sufficient to give said Defendants notice of the nature and basis of the Claim. Accordingly, the court cannot determine as a matter of law that there can be no liability on the part of Defendants R.J. Blondeau, Helen Knight and Anne Knight as to such Claim.

[78] Consequently, as to Defendants R.J. Blondeau, Helen Knight and Anne Knight, the Sixteenth Claim of the Complaint states a claim upon which relief can be granted. With regard to such Claim, the Rule 12(b)(6) Motion by Defendants R.J. Blondeau, Helen Knight and Anne Knight should be, and it hereby is, DENIED.

SO ORDERED, this the 13th day April, 2010.