Capps v. Blondeau, 2014 NCBC 24.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | 07 CVS 16486 |

| | | |
|---|---|---|
| ESTATE OF MARTHA B. CAPPS, by and through its Executor, Bruce L. Capps, and THE ANNE KYLE TRUST, by and through its Successor Trustee, Branch Banking and Trust Company, | ) ) ) ) ) | |
| Plaintiffs | ) ) | **OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |
| v. | ) ) | |
| HAROLD EARL BLONDEAU, R.J. BLONDEAU, NEAL WILLIAM KNIGHT, ANNE LOUISE KNIGHT, HELEN SOUTHWICK KNIGHT, MORGAN KEEGAN & COMPANY, INC., MARVIN L. BAKER FAMILY FOUNDATION, INC., and REGIONS BANK, d/b/a REGIONS MORGAN KEEGAN TRUST FSB, | ) ) ) ) ) ) ) ) ) | |
| Defendants | ) | |

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, comes before the court upon Defendant Morgan Keegan & Company, Inc.'s Motion for Partial Summary Judgment ("Morgan Keegan Motion"), Defendant Regions Bank's Motion for Partial Summary Judgment ("Regions Bank Motion"), Motion of the Knight Defendants for Summary Judgment ("Knight Motion"), Defendant Marvin L. Baker Family Foundation, Inc.'s Motion for Summary Judgment on All Cross Claims ("Baker Motion"), all pursuant to Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)") (collectively, "Defendant Motion(s)"), and Plaintiffs' Motion to Summarily

Deny the Knight Defendants' Motion for Summary Judgment ("Plaintiffs' Motion"), pursuant to Rules 6, 8 and 15 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR") (Defendant Motions and Plaintiffs' Motion collectively, "Motions").

THE COURT, after reviewing the Motions, briefs in support of and in opposition to the Motions, arguments of counsel and other appropriate matters of record, CONCLUDES that the Motions should be DENIED, for the reasons stated herein.

*Brownlee Law Firm, PLLC, by Gilbert W. File, Esq. and Zaytoun Law Firm, PLLC, by Robert E. Zaytoun, Esq., Matthew Ballew, Esq. and John R. Taylor, Esq., for Plaintiffs.*

*Defendant Harold Earl Blondeau,* pro se*.*

*Defendant Neal William Knight, Jr.,* pro se*.*

*Defendant Anne Louise Knight,* pro se*.*

*Defendant Helen Southwick Knight,* pro se*.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Eric M. David, Esq., Charles F. Marshall, Esq., and James T. Williams, Esq., for Defendant Morgan Keegan & Company, Inc.*

*Jordan Price Wall Gray Jones Carlton PLLC, by Paul T. Flick, Esq., for Defendant Marvin L. Baker Family Foundation, Inc.*

*Howard Stallings From & Hutson, P.A., by James B. Angell, Esq., as Receiver for Defendant Marvin L. Baker Family Foundation, Inc.*

*Robinson Bradshaw and Hinson, P.A. by Robert E. Harrington, Esq., Andrew W. J. Tarr, Esq. and Matthew F. Tilley, Esq., for Defendant Regions Bank.*

<u>PROCEDURAL HISTORY</u>

[1]     On October 12, 2007, Plaintiffs filed this civil action suit against Defendants Harold Blondeau ("Blondeau"), R.J. Blondeau, Neal William Knight, Jr. ("Neal Knight"), Anne Louise Knight ("Anne Knight"), Helen Southwick Knight ("Helen Knight") (collectively, "Knight Defendants"), Morgan Keegan & Company, Inc. ("Morgan Keegan"), Marvin L. Baker Family Foundation, Inc. ("Baker Foundation") and Regions Bank.

[2]     Plaintiffs filed a Verified Motion for Temporary Restraining Order and Preliminary Injunction, N.C. Gen. Stat. § 1A-1, Rule 65, and a Verified Motion for Appointment of Receiver for the Baker Foundation, N.C. Gen. Stat. § 1-501, *et seq.*, on October 30, 2007.  Pursuant to these motions and a subsequent hearing, on November 15, 2007, the court entered an Order on Preliminary Injunction and Appointing Receiver, by which it appointed James B. Angell, Esq. of Howard Stallings From & Hutson, P.A. as Receiver to take possession and control of the Baker Foundation.

[3]     Plaintiff Capps passed away on March 12, 2011. On July 8, 2011, the court granted a Motion to Substitute Parties, allowing Bruce Capps, as executor of the Estate of Martha B. Capps, and the Anne Kyle Trust, by and through its Successor Trustee, BB&T, to be substituted as Plaintiffs in this action.[1]

[4]     In the Complaint,[2] Plaintiffs allege the following causes of action

---

[1] Order on Mot. Substitute Parties (July 8, 2011).
[2] Plaintiffs amended the original Complaint on May 5, 2008, by which they amended the Twentieth, Twenty-First and Twenty-Second Causes of Action (Rescission of alleged Arbitration Agreement due to fraudulent inducement, Rescission of alleged Arbitration Agreement due to unconscionability, and Rescission of alleged Arbitration Agreement due to breach of fiduciary duty), and on July 15, 2011, by which they amended the Twelfth Cause of Action (Breach of Fiduciary Duty as against Regions Bank) and added a Twenty-Third Cause of Action against Defendant Regions Bank (Unfair and Deceptive Trade

("Claim(s)"): First Cause of Action [Breach of Fiduciary Duty as against Defendant Hal Blondeau] ("Claim One"); Second Cause of Action [Constructive Fraud as against Defendant Blondeau, pled in the alternative] ("Claim Two"); Third Cause of Action [Fraud and Deceit as against Defendant Blondeau, pled in the alternative] ("Claim Three"); Fourth Cause of Action [Breach of Fiduciary Duty as against Defendant Neal Knight] ("Claim Four"); Fifth Cause of Action [Constructive Fraud as against Defendant Neal Knight, pled in the alternative] ("Claim Five"); Sixth Cause of Action [Fraud and Deceit as against Defendant Neal Knight, pled in the alternative] ("Claim Six"); Seventh Cause of Action [Negligent Misrepresentation as against Defendants Hal Blondeau and Morgan Keegan] ("Claim Seven"); Eighth Cause of Action [Respondeat Superior/Vicarious Liability as against Defendant Morgan Keegan] ("Claim Eight"); Ninth Cause of Action [Negligence and/or Negligence Per Se as against Defendant Morgan Keegan] ("Claim Nine");Tenth Cause of Action [Violation of North Carolina Racketeer Influenced and Corrupt Organizations Act, N.C.G.S. Ch. 75-D, as against Defendants Hal Blondeau, Neal Knight, and Baker Foundation] ("Claim Ten"); Eleventh Cause of Action [Civil Conspiracy as against Defendants Hal Blondeau, Neal Knight, and Baker Foundation] ("Claim Eleven"); Twelfth Cause of Action [Breach of Fiduciary Duty as against Defendant Regions Bank] ("Claim Twelve"); Thirteenth Cause of Action [Unfair and Deceptive Trade Practices as against Defendant Morgan Keegan and Defendant Blondeau] ("Claim Thirteen"); Fourteenth Cause of Action [Unjust Enrichment/Quantum Meruit as against Defendants R.J. Blondeau, Anne Knight, and Helen Knight] ("Claim

---

Practices). The original Complaint and subsequent filings amending the original Complaint collectively will be referred to as "Complaint."

Fourteen"); Fifteenth Cause of Action [Revocation of Gifts as against Defendants Blondeau, R.J. Blondeau, Neal Knight, Helen Knight, Anne Knight, and Baker Foundation] ("Claim Fifteen"); Sixteenth Cause of Action [Constructive Trust as against Defendants Baker Foundation, Blondeau, R.J. Blondeau, Neal Knight, Anne Knight, and Helen Knight] ("Claim Sixteen"); Seventeenth Cause of Action [Equitable Action for Accounting] ("Claim Seventeen"); Eighteenth Cause of Action [Preliminary Injunction] ("Claim Eighteen"); Nineteenth Cause of Action [Order for Appointment of Receiver pursuant to Chapter 1, Article 38 of the North Carolina General Statutes, pled in addition and in the alternative] ("Claim Nineteen"); Twentieth Cause of Action [Rescission of alleged Arbitration Agreement due to fraudulent inducement] ("Claim Twenty"); Twenty-First Cause of Action [Rescission of alleged Arbitration Agreement due to unconscionability] ("Claim Twenty-One"); Twenty-Second Cause of Action [Rescission of alleged Arbitration Agreement due to breach of fiduciary duty] ("Claim Twenty-Two"); and Twenty-Third Cause of Action [Unfair and Deceptive Trade Practices as against Regions Bank] ("Claim Twenty-Three").

[5]     On June 10, 2009, based on his prior interactions with Capps, Defendant Hal Blondeau pled guilty to charges of Investment Advisor Fraud and Making and Subscribing a False Tax Return. *United States v. Blondeau*, 2011 U.S. Dist. LEXIS 139082 at *1.

[6]     On January 7, 2008, Defendants Morgan Keegan and Blondeau filed motions asking the court to stay this action and compel certain issues to be resolved by arbitration.  They contended that a valid and enforceable arbitration agreement between Capps and Morgan Keegan prevented Plaintiffs from raising claims as to Morgan

Keegan and its agents or employees in this civil action.[3] Because applicable law requires a court to determine summarily the existence of an enforceable arbitration agreement before ordering a dispute to arbitration, the court entered an order on May 2, 2008, requiring limited discovery as to the existence of an agreement to arbitrate between Capps and Morgan Keegan and whether such agreement was unconscionable.[4] After considering the evidence produced by the parties in response to the discovery order, the court entered an order denying the motions to compel arbitration by Morgan Keegan and Blondeau on April 13, 2010.[5] That order was subsequently appealed, and the denial of arbitration was affirmed by the North Carolina Court of Appeals on November 15, 2011.[6]

[7]     On April 13, 2010, the court dismissed Claims Fourteen and Fifteen against R.J. Blondeau, Helen Knight and Anne Knight.[7]

[8]     In their Answers to the Complaint, Defendants Neal Knight and Anne Knight alleged crossclaims against the Baker Foundation for indemnification.[8] Neal Knight also alleged a counterclaim against Capps for attorney's fees.[9] Morgan Keegan also filed a crossclaim against the Baker Foundation for indemnification.[10]

[9]     On June 10, 2010, Defendant Baker Foundation filed Cross-Claims of the Defendant Marvin L. Baker Family Foundation, Inc. ("Baker Foundation Crossclaims").

---

[3] Morgan Keegan's Mot. Stay Jud. Proceedings & Compel Arb., Blondeau Mem. Law Supp. Mot. Compel Arb.
[4] Order (May 2, 2008) (citing *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 271-72 (1992)).
[5] Order on Mot. Stay Jud. Proceedings and Compel Arbitration, 2010 NCBC 7 (Apr. 13, 2010), *aff'd*, 2011 N.C. App. LEXIS 2373.
[6] *Capps v. Blondeau*, 2011 N.C. App. LEXIS 2373.
[7] Op. & Order on Mot. Dismiss ¶¶ 75-76, 2010 NCBC 8 (Apr. 13, 2010) ("Opinion").
[8] Neal Knight Answer to Complaint 46-47; Anne Knight Answer to Complaint 45.
[9] Neal Knight Answer to Complaint 45.
[10] Morgan Keegan's Amendment to Answer Asserting Crossclaim Against Baker Fdtn.

The Baker Foundation CrossClaims allege the following against Defendants Hal Blondeau, R.J. Blondeau, Neal Knight, and Anne Knight: [11] First Claim for Relief (Breach of Fiduciary Duty) ("Crossclaim One"); Second Claim for Relief (Conversion) ("Crossclaim Two"); Third Claim for Relief: Constructive Trust and Accounting ("Crossclaim Three"); and Fourth Claim for Relief: Unjust Enrichment ("Crossclaim Four").

[10]    On September 14, 2012, Defendant Baker Foundation filed a Motion for Entry of Default as to Harold Earl Blondeau on the Cross-Claims of the Defendant Marvin L. Baker Family Foundation, Inc. ("Baker Blondeau Motion"), seeking an entry of default against Blondeau as to the Baker Foundation Crossclaims.

[11]    On September 19, 2012, Defendant Blondeau filed a Motion to Stay the Proceeding or Dismiss Defendant Blondeau from this Action ("First Blondeau Motion"), seeking a stay in the proceedings to allow him to build his case or, in the alternative, dismissal of Blondeau from the action.

[12]    On September 24, 2012, the Knight Defendants filed the Knight Motion, seeking summary judgment on all claims asserted by Plaintiffs against the Knight Defendants. Also on September 24, 2012, Defendant Morgan Keegan filed the Morgan Keegan Motion, seeking summary judgment on all claims asserted by Plaintiffs against Defendant Morgan Keegan, and Defendant Regions Bank filed the Regions Bank Motion, requesting summary judgment on all claims asserted by Plaintiffs against Defendant Regions Bank. Defendant Baker Foundation also filed the Baker Foundation

---

[11] Although R.J. Blondeau was originally named as a Defendant in both the original Complaint and the Baker Foundation Crossclaims, all claims against him subsequently were dismissed. Voluntary Dismissal with Prejudice as to R.J. Blondeau (Jan. 25, 2012); Notice of Dismissal of Cross-Claim as to RJ Blondeau, (Feb. 2, 2012).

Motion on September 24, 2012, seeking Summary Judgment on all of its own crossclaims and all crossclaims asserted against it by the Knight Defendants and Defendant Morgan Keegan.

[13]    On September 29, 2012, Defendant Blondeau filed a Motion to Dismiss Defendant Blondeau ("Second Blondeau Motion"), moving for his dismissal from the action.

[14]    On October 12, 2012, Plaintiffs filed the Plaintiffs' Motion, seeking denial of the Knight Defendants' Motion for Summary Judgment on procedural grounds.

[15]    On March 5, 2013, the court entered an Order on Motion for Entry of Default and Motions to Dismiss, granting the Baker Blondeau Motion and denying the First and Second Blondeau Motions.

[16]    The Motions have been fully briefed and argued and are ripe for determination.

FACTUAL BACKGROUND

Among other things, the Complaint alleges that:

[17]    Martha B. Capps ("Capps"), now deceased, was a resident of Raleigh, North Carolina.[12] Capps learned in 1988 that she was to inherit a large sum of money from her aunt Anne Kyle ("Kyle"), a Florida resident.[13] Capps was in an abusive marriage at the time, and undertook to seek legal advice from an estate planning attorney on how to protect this anticipated inheritance from her husband.[14]

[18]    Capps and Kyle were referred to Neal Knight, a Florida-based attorney.[15]

---

[12] Compl. ¶ 1.
[13] *Id.* ¶¶ 19-20.
[14] *Id.* ¶¶ 22-23.
[15] *Id.* ¶ 24.

Knight helped Kyle establish two trusts: the Anne Kyle GST and the Anne Kyle Irrevocable Trust (collectively, "Trust").[16] Capps was named beneficiary of the Trust.[17] Knight continued to work with Capps as Kyle's estate administration attorney and Capps' resident process agent for the state of Florida after Kyle's death.[18]

[19]    Capps' financial advisor and stockbroker, Blondeau, was intimately involved in the creation of the Trust, even attending Capps' meeting with legal counsel and corresponding with Neal Knight about Kyle's estate planning.[19] At the time of Kyle's death, Blondeau was employed by A.G. Edwards, which subsequently became the successor trustee for the Trust.[20] The Trust contained at least four million dollars at the time that A.G. Edwards became successor trustee.[21]

[20]    A.G. Edwards served as successor trustee from 1989 to 1997, when Blondeau left employment at A.G. Edwards to work for Morgan Keegan.[22] At Blondeau's advice, Capps then moved all of her accounts, including administration of the Trust, to Morgan Keegan.[23] Regions Bank, which owned Morgan Keegan, became successor trustee.[24]

[21]    Upon assuming successor trustee responsibilities, Regions Bank discovered that A.G. Edwards had failed to pay Trust net income and related taxes in the amount of at least one million dollars to Capps during its tenure as successor

---

[16] *Id.* ¶¶ 28-29.
[17] *Id.* ¶ 29.
[18] *Id.* ¶ 30.
[19] *Id.* ¶¶ 25-26.
[20] *Id.* ¶ 34.
[21] *Id.* ¶ 36.
[22] *Id.* ¶ 39-40.
[23] *Id.*
[24] *Id.* ¶ 41.

trustee.[25] Rather than identifying or explaining the problem to Capps, Regions Bank opted to pay income taxes out of Trust property. This resulted in the imposition of a higher tax rate than would have been required had Capps paid the taxes as beneficiary.[26] Blondeau and Knight were closely involved in the legal issues surrounding the undistributed net income, and discussed these matters with estate attorney Gerald Thornton ("Thornton") both in and out of Capps' presence.[27]

[22]    In July 2001, Blondeau and Knight incorporated the Baker Foundation, a Florida non-profit corporation named for Capps' father, without the knowledge of Capps or Thornton.[28] Blondeau and Knight named themselves President, Vice President, Secretary, Treasurer and Directors of the Baker Foundation. They also named R.J. Blondeau, Hal Blondeau's son, and Anne Knight, Neal Knight's daughter, as Directors.[29]

[23]    Capps executed several estate planning documents on August 21, 2001. One of these documents granted Blondeau financial Power of Attorney, giving him the ability to make financial decisions for Martha Capps, with Knight named as first successor.[30] On the same day that Capps executed these documents, certain stocks and securities held as Trust assets were transferred to Capps' personal account at Morgan Keegan.[31] These assets were improperly liquidated, resulting in a short-term capital loss of $452,451.96.[32]

[24]    The Baker Foundation was funded with $1,775,000 from Capps' personal

---

[25] *Id.* ¶ 42.
[26] *Id.* ¶ 43.
[27] *Id.* ¶ 47-50.
[28] *Id.* ¶ 56-58.
[29] *Id.* ¶ 64.
[30] *Id.* ¶ 54-55.
[31] *Id.* ¶ 57.
[32] *Id.* ¶ 58.

account at Morgan Keegan on August 28, 2001, one week after Capps executed her estate planning documents and Trust securities were liquidated in Capps' account.[33] This transfer comprised 80% of her then-existing personal estate.[34]

[25]  Defendants Blondeau and Neal Knight withheld the Baker Foundation transfer from Thornton, and Capps was not fully informed of the amount of the transfer.[35] Further, Capps was not informed of the fact that this transfer constituted an irrevocable charitable gift.[36]

[26]  Assets belonging to Capps were transferred from her personal account at Morgan Keegan to the Baker Foundation in eight transactions occurring between August 2001 and July 2005.[37] These transfers were of no material benefit to Capps or her family, and assets held by the Baker Foundation were completely under the control of the Foundation's Directors.[38]

[27]  From 2002 to 2006, the Baker Foundation made several charitable donations to organizations with no connection to Capps or her family, resulting in favorable community recognition for Blondeau and Neal Knight, and accrued several thousand dollars in "directors' fees" despite the fact that the Baker Foundation Directors had not contributed time to the Baker Foundation.[39]

[28]  During the same time period, Defendant Regions Bank permitted several distributions of Trust principal without having the required written authorization from

---

[33] *Id.* ¶ 59.
[34] *Id.* ¶ 61.
[35] *Id.* ¶ 62.
[36] *Id.* ¶¶ 61-62.
[37] *Id.* ¶¶ 59, 66, 71, 79, 82, 86, 90, 115, 120.
[38] *Id.* ¶¶ 61, 64.
[39] *Id.* ¶¶138-139.

Capps, or for purposes not permitted by the Trust Agreement.[40] Defendant Regions Bank failed properly to perform its fiduciary duties as trustee by relying on Hal Blondeau's position as stockbroker and partner at Morgan Keegan to conclude that Hal Blondeau was acting in accordance with his fiduciary duties to Capps.[41]

[29] Additionally, several thousand dollars from the Trust and Capps' personal accounts were paid to universities and law schools where R.J. Blondeau and Anne Knight and Helen Knight were enrolled,[42] to Wachovia Bank, which Plaintiff believes was designed to obscure the fact that Hal Blondeau was the real recipient of the transfers to Wachovia Bank, [43] and to Anne Knight and Helen Knight.[44] Capps' Morgan Keegan check card was also used to make several unauthorized purchases from alcohol vendors.[45]

[30] In May 2004, Capps' doctor observed during a routine examination that Capps appeared to be suffering memory loss. Her doctor gave her a sample of a drug to help with Alzheimer's disease.[46] The following day, Hal Blondeau submitted a document requesting a wire transfer in the amount of $350,000 from the Trust to a real estate agent, purportedly so that Capps could purchase a second beach home in Morehead City, North Carolina.[47] In actuality, the funds were used by Hal Blondeau to purchase a beach home for himself.[48] Hal Blondeau drafted a promissory note payable to Capps for the amount of $350,000, purportedly to represent the fact that the money

---

[40] *Id.* ¶¶ 70-72, 75, 80, 81, 85.
[41] *Id.* ¶ 73.
[42] *Id.* ¶¶ 67, 74, 77, 80,
[43] *Id.* ¶ 83, 87.
[44] *Id.* ¶¶ 93, 114.
[45] *Id.* ¶¶ 88, 113.
[46] *Id.* ¶ 100.
[47] *Id.* ¶ 102.
[48] *Id.* ¶ 104.

was a loan from Capps for the purchase, but never recorded a Deed of Trust.[49] In his role as stockbroker and employee of Morgan Keegan, Hal Blondeau was obligated to provide financial and investment services to Capps, and was prevented from borrowing money from a client except upon specific conditions that were not met in the present case.[50]

[31]   On August 8, 2005, Capps' physician wrote a letter in which he stated that he believed that Capps was experiencing significant cognitive impairment and could not make financial or personal decisions.[51]

[32]   In February 2006, Hal Blondeau paid $1,072.19 to Neal Knight, purportedly to reimburse him for a visit to North Carolina to meet with Capps. Neal Knight did not meet with Capps during that visit.[52]

[33]   Hal Blondeau and Neal Knight were aware of Capps' domestic situation and her reliance upon them for financial and estate planning issues, and used her reliance to their advantage.[53]

## DISCUSSION

### Plaintiffs' Motion

[34]   Plaintiffs move for a summary denial of the Knight Motion on procedural grounds. Specifically, Plaintiffs point to the fact that the required brief in support of the Knight Motion was not filed until more than 24 hours after the filing deadline set by this court's May 23, 2012 Order on Motion for Amended Case Management Order, that the

---

[49] *Id.* ¶ 107.
[50] *Id.* ¶ 110-111.
[51] *Id.* ¶ 123.
[52] *Id.* ¶ 128.
[53] *Id.* ¶143.

Knight Defendants never submitted exhibits cited in the brief for consideration by the court, and that the Knight Defendants did not file their Motion with the Wake County Clerk of Superior Court or pay the associated filing fee.[54] Plaintiffs speculate that the Knight Defendants deliberately delayed filing their brief in order to relying upon evidence and wording from Defendant Morgan Keegans' Brief in Support of its Motion for Partial Summary Judgment.[55]

[35]    BCR 15.2 requires all written summary judgment motions filed with the North Carolina Business Court to be contemporaneously accompanied by a supporting brief. Further, BCR 8 requires any filings submitted to the Business Court to be filed with the Clerk of Superior Court in the county of venue within five business days, in accordance with Rule 5(d).

[36]    A party practicing before the North Carolina Business Court should take the deadlines imposed by its orders and the rules of practice very seriously. "The failure to file a brief or response within the time specified in [BCR 15] shall constitute a waiver of the right thereafter to file such a brief or response . . . . A motion unaccompanied by a required brief may, in the discretion of the Court, be summarily denied." BCR 15.11.

[37]    Our court of appeals has set out an appropriate standard for determining whether a filing should be stricken for failing to comply with the applicable rules of practice. In deciding whether to dismiss a filing for procedural error, courts should weigh the impact of the rule violations on the non-violating party and the importance of upholding the integrity of the rules against the broader public policy favoring the resolution of disputes on their merits. *See, e.g.*, *Hammonds v. Lumbee River Elec.*

---

[54] Br. Supp. Pls.' Mot. Summ. Deny Knight Defs.' Mot. Summ. J. at 2-3.
[55] *Id.* at 4.

*Membership Corp.*, 178 N.C. App. 1, 15 (2006). The court is troubled by the Knight Defendants' reliance on Morgan Keegan's Memorandum of Law in Support of Motion for Partial Summary Judgment. Nevertheless, in light of the relatively short delay between the deadline and the time the Knight Defendants submitted their brief, the relatively minor impact on Plaintiffs due to the delay and the Knight Defendants' failure to file with the Wake County Clerk of Superior Court, the importance of consistency in applying the BCRs and the complexity of the case before the court, the court elects, in its discretion, to receive and review the Knight Defendants' Motion in spite of these filing improprieties.

[38]    Accordingly, the Plaintiffs' Motion should be DENIED.

<u>Summary Judgment</u>

[39]    Summary judgment is appropriate under Rule 56 if the pleadings, depositions, interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. *Forbis v. Neal*, 361 N.C. 519, 523-524 (2007).

[40]    A movant may utilize a motion for summary judgment to force the non-movant to "forecast" evidence demonstrating that the non-movant will be able to make out at least a prima facie case at trial. *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66 (1989). Any inference of fact should be drawn against the movant. *Forbis*, 361 N.C. at 523-24 (citing *Caldwell v. Deese*, 288 N.C. 375, 378 (1975)). The existence of a genuine issue of material fact will require the court to preserve the issue for a finder of fact. *Bumpers v. Cmty. Bank of N. Va*, __ N.C. __, 747 S.E.2d 220 (2013).

[41]    The Morgan Keegan Motion seeks summary judgment on all Claims (direct and vicarious) for unfair and deceptive trade practices under G.S. § 75-1.1, all

Claims for negligence and/or negligent misrepresentation arising from any transaction that occurred before August 1, 2005, all Claims for vicarious liability arising from any transaction that occurred before August 1, 2005, and any request for punitive damages against Morgan Keegan.

[42]  The Regions Bank Motion seeks summary judgment in favor of Regions Bank on "all claims asserted by Plaintiffs, with the exception of those claims relating to Plaintiffs' alleged damages resulting from Regions' resignation as co-trustee"[56] of the Trust.

[43]  The Knight Motion seeks summary judgment as to all of Plaintiff's Claims against the Knight Defendants.

[44]  The Baker Motion, through the Receiver for the Baker Foundation, seeks summary judgment as to all Baker Foundation Crossclaims and all crossclaims against the Baker Foundation, including the crossclaims for indemnification by Defendants Neal and Anne Knight and the purported crossclaims of Defendant Morgan Keegan.

## Conclusion

[45]  The court has carefully examined each of the Defendant Motions, and the evidence of record, under the standards of Rule 56.  As a result, the court is unable to conclude that there exist no genuine issues of material fact with regard to any of the Claims that is a subject of one or more of the Defendant Motions. Consequently, the court further concludes that the Defendant Motions should be DENIED.[57]

NOW THEREFORE, based upon the foregoing, it is hereby ORDERED that:

---

[56] Def. Regions Bank's Mot. Partial Summ. J. ("Regions Bank Memo") at 2 (referring to Compl. ¶¶ 301-02).

[57] The court later may consider issues raised by the Defendant Motions upon appropriate request pursuant to Rule 50.

[46]     Plaintiffs' Motion to Summarily Deny the Knight Defendants' Motion for Summary Judgment is DENIED.

[47]     Defendant Morgan Keegan & Company, Inc.'s Motion for Partial Summary Judgment is DENIED.

[48]     Defendant Regions Bank's Motion for Partial Summary Judgment is DENIED.

[49]     The Motion of Knight Defendants for Summary Judgment is DENIED.

[50]     Defendant Marvin L. Baker Family Foundation, Inc.'s Motion for Summary Judgment on All Cross Claims is DENIED.

[51]     This matter will come before the court for trial on Monday, August 25, 2014, beginning at 10:00 a.m. in courtroom 3B of the Wake County Courthouse, 316 Fayetteville Street, Raleigh.

[52]     The court will hold a pre-trial conference concerning this matter on Monday, August 11, 2014, beginning at 11:00 a.m. in courtroom 3B of the Wake County Courthouse, 316 Fayetteville Street, Raleigh. At that time, the court will consider and resolve any motions in limine or other pending pre-trial issues ("Pre-trial Motions").[58] Any Pre-trial Motions shall be e-filed with supporting briefs by the close of business on July 14, 2014. Any response to a Pre-trial Motion shall be e-filed by the close of business on August 4, 2014. Any reply in further support of a Pre-trial Motion shall be e-filed by the close of business on August 8, 2014.

This the 17th day of June, 2014.

---

[58] The court will receive proposed jury instructions and issues at a later time.